**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

ISHAYKA WOOD, individually,
and on behalf of all others similarly situated,

      Plaintiff,

v.

OMNI FINANCIAL OF NEVADA, INC.,
D/B/A OMNI FINANCIAL and OMNI MILITARY LOANS,

      Defendants.

CASE NO.:
DEMAND FOR JURY TRIAL

**CLASS ACTION COMPLAINT**

Plaintiff Staff Sergeant ISHAYKA WOOD ("Plaintiff" or "SSG Wood"), on behalf of herself and all others similarly situated, alleges the following based upon personal knowledge as to herself, upon information and belief, and the investigation of her counsel as to all other matters, and brings this class action against Defendant OMNI FINANCIAL OF NEVADA, INC., D/B/A OMNI FINANCIAL and OMNI MILITARY LOANS ("Omni"), as follows:

**I.    NATURE OF THE ACTION**

1.    This Complaint seeks to enforce the Military Lending Act, 10 U.S.C. § 987, ("MLA"), which was enacted to protect United States active-duty service members and their dependents from an epidemic of predatory lending. Excessive debt endangers our nation's military readiness, morale, family household, security clearances, careers, and impacts service member retention.

2.    Omni Financial of Nevada, Inc. d/b/a Omni Financial and Omni Military Loans is an installment lender that specializes in lending to active-duty military service members and their dependents. About 90% of Omni's loans are extended to active-duty members of the armed forces

and their dependents, while the remaining loans are extended to civilians and non-covered servicemembers (such as military veterans and retirees) who do not have access to the allotment system.

3.    Omni uses several financial tools to shake down military families, all of which violate the Military Lending Act (MLA). Specifically, Omni facilitates its theft by using dishonest tactics on its standard forms and unlawful terms which violate the MLA: (1) charging interest rates that exceed the federal statutory rate cap of 36%; (2) refinancing/rolling over installment loans for covered borrowers; (3) requiring mandatory allotment as a condition to a loan; and (4) requiring it be given a security interest in the borrower's bank account. See, 10 U.S.C. § 987

4.    In protecting our active-duty service members and their families, as "Penalties and Remedies" for violations of the MLA, Congress requires that, "any credit agreement, promissory note, or other contract prohibited under this section is void from the inception of such contract." 10 U.S.C. § 987(f)(3).

5.    Upon information and belief, Omni's business practices that fail to comply with the MLA are not limited to its Colorado or Virginia locations, instead, it is a nationwide scheme in that it fails to issue installment loans in accordance with the MLA.

6.    Plaintiff is precisely the type of active-duty service member that Congress and the Department of Defense sought to protect when it crafted the Military Lending Act.

7.    Omni's unlawful conduct has occurred for many years, however, the applicable time period for this lawsuit brought by Plaintiff and the Class is made over the last five (5) years.

## II. JURISDICTION AND VENUE

8.    This Court has jurisdiction over the proposed class pursuant to the Military Lending Act under 10 U.S.C. § 987 and 28 U.S.C. § 1331.

9.     The Court also has jurisdiction over this action pursuant to the Class Action Fairness Act 28 U.S.C. § 1332(d), because there are at least 100 Class members in the proposed Class, the combined claims of proposed Class members exceed $5,000,000, exclusive of interest and costs, and as discovery will show, more than two-thirds of class members are citizens of a state other than Omni's states of citizenship, Nevada and Delaware.

10.    Venue is proper in this district pursuant to 10 U.S.C.A. § 987 and 28 U.S. §1391 because Omni is a corporation subject to personal jurisdiction in this District as doing business here for the purposes of venue.

11.    Additionally, the loan contract states that "CHOICE OF LAW AGREEMENT: I agree and acknowledge that this loan agreement and the related loan transaction shall be governed, construed, and enforced in accordance with federal law and the laws of the State of Virginia."

12.    This Court possesses personal jurisdiction because Omni deliberately and regularly conducts business, marketing, distributing, promoting and/or issues installment loans, in and into Virginia. The installment loans at issue are believed to be issued from the State of Virginia.  Omni has obtained the benefits of the laws of Virginia and profited handsomely from Virginia commerce.

### III. PARTIES

13.    Plaintiff Staff Sergeant Ishayka Wood is a natural person and resident of the City of Alexandria, Virginia, and a citizen of Virginia.

14.    At all times relevant hereto, SSG Wood was an active-duty service member with the United States Army.

15.    Defendant Omni Financial of Nevada, Inc. d/b/a Omni Financial and Omni Military Loans is a foreign corporation operating in and into Virginia.

## IV.    OVERVIEW OF THE MILITARY LENDING ACT

16.     In August 2006, the Department of Defense ("DOD") pulled back the curtain on predatory lending and investigated loans directed at military families. In its Report (the "Report"),[1] the DOD uncovered a litany of financial issues plaguing our country's military families that directly related in a risk to our national security, a finding that active duty service members had their clearances revoked or denied due to financial problems, lack of military readiness and morale, among many other things.[2] Shockingly, a five year study illustrated that between 2000-2005 financial issues resulted in a 1600 percent increase in financial hardship among Sailors and Marines military families.[3]

17.     As early as summer 2006, the Report identified serious issues with creditors and predatory lenders offering consumer products featuring high fees/interest rates and requiring military allotments as condition of a loan.[4]

18.     The Consumer Credit Research Foundation asked military families whether the "government should limit the interest rates that lenders can charge even if it means fewer people will be able to get credit" and it resulted in a finding that 75 percent of non-payday borrowers and 74% of payday borrowers agreed to cap rates.[5][6]

19.     For decades, the DOD attempted to dissuade military families from short term installment loans similar to those offered by Defendant:

> Limiting high-cost options assists the Department in making the point clear to Service members and their families that high cost loans are not fiscally prudent and that they are to resolve their financial problems through counseling and alternatives,

---

[1] https://apps.dtic.mil/sti/pdfs/ADA521462.pdf
[2] *Id.*
[3] *Id.*
[4] *Id.*
[5] *Id.*
[6] Dr. William O. Brown, Jr., and Dr. Charles B. Cushman, Jr., "Payday Loan Attitudes and Usage Among Enlisted Military Personnel," Consumer Credit Research Foundation, June 27, 2006, p. 10

rather than perpetuate them through predatory high cost loans.[7]

20.    To curb usurious interest rates, excessive APR rates, bogus fees, deceptive charges, requiring bank accounts as security interests, curbing mandatory military allotment, rejecting refinancing/rolling over extended credit using proceeds from other credit extended by the same lender to the same borrower, etc.,  the DOD requested assistance from Congress, state legislatures, and federal and state enforcement agencies.[8] "Specifically, lenders should not be permitted to base loans on prospective bad checks, electronic access to bank accounts, mandatory military allotments, or titles to vehicles."[9]

21.    Notably, the DOD also determined:

All installment lenders with information on their location are in Nevada, a state with no rate cap for consumer loans.
…
Loan sites with heavy military focus require the applicant to submit Leave and Earnings Statements, require or encourage payment by allotment, and include graphics, links, or text designed to appeal to members of the armed forces. Most payday loan sites have little emphasis on military beyond pages headed "military payday loans."[10]

## V.    FACTS

### A.    Omni's Business Model Targets Our Military

22.    Omni's installment loans typically range from $500 to $10,000 with terms between six (6) months and 36 months. Omni has a national presence with offices located near major military installations located in Nevada, Tennessee, Georgia, North Carolina, Texas, Colorado, Washington, California, Virginia, Kansas, and Oklahoma.

23.    Omni extends credit through closed-end installment loans which are subject to the

---

[7] *Id.*

[8] *Id.*

[9] https://apps.dtic.mil/sti/pdfs/ADA521462.pdf

[10] https://apps.dtic.mil/sti/pdfs/ADA521462.pdf

requirement of the MLA when made to a covered borrower (active duty service members and their dependents), including the interest rate cap of 36% MAPR.

24.    As Omni knows, the Code of Military Conduct requires active-duty service members to pay their debts. If an active-duty service member fails to pay his or her debts, the service member may lose their security clearance, job, rank, pay, etc.

25.    To further ensure payment, Omni requires allotment as a condition of its loans because its payments are guaranteed and established allotment makes it difficult for service members to terminate or dispute unlawful charges.

26.    Omni's business model (Nevada incorporation, targeted installment loans, MAPR rates, finance charges, prepaid finance charges, fees, required allotment, required leave and earnings statement, required EFT, requirement for a borrower to identify their bank account as security interest) and its website (www.omnimilitaryloans.com[11]) are right out of the predatory lending playbook about which the DOD warned Congress:

---

[11]    https://web.archive.org/web/20170606165059/https://www.omnimilitaryloans.com/military-loans-facts/



### The Facts About Military Loans

Frequent moves, deployments, and military spouse unemployment can take a toll on the financial health of military families. Many live paycheck to paycheck and are unable to build up a substantial savings account or emergency fund. Having to come up with money to pay for a car repair, PCS-related cost, an uncovered medical bill, or other expense can compound already stressful circumstances. If you are a servicemember and find yourself in this situation, a military loan can help.

### What is a military loan?

A military loan is a personal loan designed especially for active duty servicemembers. At Omni, we are proud to offer military loans to active duty members of the following military branches:

- Army
- Navy
- Air Force
- Marines
- Coast Guard



- Marines
- Coast Guard

### Military loan eligibility

If you are currently serving in one of the above branches and have at least eight months before your separation date, you are eligible to apply for an Omni military loan. We also provide military loans for career retired military personnel.

### Applying for a military loan

Applying for an Omni military loan is easy and we offer several options. You can apply online, over the phone, or at one of our 50+ branch locations around the world. Even if you are stationed overseas, you can still apply for a loan.

### After applying

You will receive a confirmation of your online application, as well as other updates, at the secure message center.



**Required information and paperwork**

- Social security number
- End of month LES statement



**Free credit report**

As part of the application process, we will be accessing your credit report which details your credit history. You'll receive a free copy of this report automatically upon completion of an online application. If you applied in person, you can request your free credit report at your local branch office.

**Security and privacy**

At Omni, we take your security and privacy very seriously. In order to apply for a loan, you will need to disclose some confidential and personal information. Whether you apply online, over the phone, or in person, you can be confident that your information will be safe and secure.

**The advantages of an Omni military loan**

Military loans from Omni provide a financial helping hand to military members. Some of the main advantages of using Omni for your lending needs include:

Flexible amounts – You can borrow as little as $500 or as much as $10,000.

Convenient – Apply online, over the phone or in person.

Fast approval – We understand that when you need money, time is of the essence. That's why our approval process is fast. In many cases you can receive loan approval and funding within 24 hours.

Responsible lending – While we do our best to approve your requested loan amount, we look at your ability to repay the loan before determining the amount you can borrow.

In your community – We are one of the only military lenders that has actual brick and mortar locations. Our 50+ branch offices are located near military installations worldwide and we are proud to give back to the communities where we live and serve. Stop by any time to ask questions, apply for a loan, or get more information.



27.    Omni has made loans to thousands of active-duty service members stationed around

the world since its inception.[12]

28.    Moreover,    Omni's    welcome    video    on    its    website    homepage

(www.omnimilitaryloans.com) invites military families to apply. A typed version of the video is

below without alteration:

> If you're in the military and need funds fast, you need a simple and trustworthy
> solution. What happens if a lender says "no" after you apply? At Omni Financial

---

[12] https://www.omnimilitaryloans.com/

"we love to say yes." For over 50 years, Omni Financial has served thousands of military members and families providing straightforward lending solutions when needed most. Our decades of experience give us an in depth understanding of the unique financial needs of your military lifestyle. Our installment military loans range between $500 and $10,000 and can be used for personal, or emergency expenses, debt consolidation, pcs moves, and more. Once approved funds can often be received same day worldwide and we back our services up with a 15-day satisfaction guarantee. If you're not satisfied, neither are we. When you need a reliable lender, don't settle for less. Get more, fast. With Omni Financial.[13]

## B.    Staff Sergeant Wood Was Targeted by Omni

29.    Plaintiff is a distinguished soldier and an essential member of an elite military team that is the backbone of our nation's executive branch. Plaintiff is an E-6 Staff Sergeant in the United States Army and works for the White House Communications Agency providing global information services to the President, Vice President, Executive Office of the President, and United States Secret Service.[14] Plaintiff holds a top-secret security clearance, and her military position is highly selective, sought after and prestigious. Essentially, SSG Wood helps ensure the ability of the White House to communicate anywhere, anytime, and by any means to anyone.[15]

30.    Besides being an elite member and top performer in our military, Plaintiff is the second of eight children and the backbone of her family.  Since her enlistment at 17-years of age, Plaintiff has sent a portion of her paycheck home to help her struggling single mother raise six minor children. Plaintiff routinely sends money home to her mother and siblings to provide for their basic necessities.

31.    Periodically, Plaintiff has had to shoulder a disproportionate burden of providing financial support for her family as her mother has battled drug addiction.

32.    In need of funds to help her family survive, Plaintiff turned to Omni, who in turn

---

[13] *Id.*
[14] https://www.whitehousecommsagency.mil/
[15] *Id.*

exploited her financial hardship and continues to place her military career and family at risk.

33.    Over the last five years[16], Defendant has sold Plaintiff at least eight (8) installment loans, all of which violate the MLA.

34.    For Plaintiff's first four (4) Omni installment loans, Plaintiff appeared at Omni's branch in Colorado Springs located at 3731 Drennan Road Colorado Springs, Colorado 80910 ("Omni Colorado Springs"). At that time, Plaintiff was stationed at Fort Carson, which is located about one mile from Omni's Colorado Springs location.

35.    Plaintiff needed these loans to cover general living expenses related to her personal, household, and/or family needs.

36.    The eight (8) Omni loans made to Plaintiff Wood are detailed in the chart below:

| Loan Date/ First Payment Date | Loan Term | Monthly Amount | Loan to Covered Borrower (Amount Financed) | Prepaid Finance Charge | Amount Given to Covered Borrower Directly | Amount Paid on Covered Borrower Account Roll over | Total Principal Loan Amount (alleged) | listed APR | MAPR |
|---|---|---|---|---|---|---|---|---|---|
| 11/16/16 12/31/16 | 10 | $125 | $1,053.41 | $84.27 | $1,053.41 | - | $1,137.68 | 35.705 % | **54.260%** |
| 1/5/17 2/28/17 | 23 | $125 | $2,110.42 | $85.44 | $1,067.94 | $1,042.48 | $2,195.86 | 30.557 % | 35.345% |
| 8/15/17 9/30/17 | 15 | $190 | $2,320.25 | $43.71 | $546.35 | $1,773.90 | $2,363.96 | 30.132 % | 33.203% |
| 5/18/18 6/30/18 | 11 | $190 | $1,768.13 | $42.93 | $536.57 | $1,231.56 | $1,811.06 | 32.322 % | **37.354%** |
| 11/14/18 12/31/18 | 20 | $200 | $3,127.99 | $250.24 | $3,127.99 | - | $3,378.23 | 28.055 % | **38.257%** |
| 10/23/19 11/30/19 | 15 | $250 | $3,109.74 | $248.78 | $3,109.74 | - | $3,358.52 | 28.250 % | **41.656%** |
| 9/8/21 9/30/21 | 36 | $265 | $5,834.75 | $150.00 | $5,834.75 | - | $5,984.75 | 35.945 % | **38.156%** |
| 4/8/22 4/30/22 | 36 | $265 | $5,834.59 | $150.00 | $621.35 | $5,213.24 | $5,984.59 | 35.947 % | **38.074%** |

---

[16] Plaintiff's first installment loan was received on November 16, 2016, however, it was unlawfully refinanced three times, taking the loan within the five-year statute of limitation period.

37.     None of these Omni loans were used to secure specific personal property.

38.     The MLA prohibits installment loan refinancing by Defendant:

It shall be unlawful for any creditor to extend consumer credit to a covered member or a dependent of such a member with respect to which – (1) the creditor rolls over, renews, repays, refinances, or consolidates any consumer credit extended to the borrower by the same creditor with the proceeds of the other credit extended to the same covered member or dependent. 10 U.S.C. § 987(e)(1).

39.     As the above chart shows, Plaintiff's loans on January 5, 2017, August 15, 2017 and May 18, 2018 all included amounts that were used to pay off prior loans.  In other words, these three loans included amounts that were "rolled over" or "refinanced" into subsequent loans.  The column in the chart labeled "Amount Paid on Covered Borrower's Account" shows the specific amounts of each rolled-over loan.

40.     Similarly, Plaintiff's April 8, 2022 loan was also "rolled over" or "refinanced" and included $5,213.24 due on her September 8, 2021 loan.

41.     The MLA also provides that it is unlawful for any creditor to extend consumer credit to covered members or their dependents if the creditor "requires as a condition for the extension of credit that the borrower establish an allotment to repay an obligation." (10 U.S.C. § 987(e)(6)) or "used a check or other method of access to deposit, savings, or other financial account maintained by the borrower, or the title of a vehicle as security for the obligation." 10 U.S.C. § 987(e)(5).

42.     On all eight loans, Omni required Plaintiff to agree to repayment by "allotment" in violation of 10 U.S.C. § 987(e)(5).

43.     On all eight loans, Omni further required Plaintiff to give Omni a security interest in her bank account in violation of 10 U.S.C. § 987(e)(5).

44.     The MLA prohibits a "creditor" from extending certain kinds of "consumer credit"

12

to covered borrowers with a military annual percentage rate of interest ("MAPR") greater than thirty-six percent (36%) and directs the Secretary of Defense to prescribe regulations to carry out the purposes of the MLA, specifically to include definitions for terms "creditor" and "consumer credit." *See also* 32 C.F.R. § 232, *et seq.* (applicable regulations adopted by the Secretary of Defense).

45.    The MAPR for MLA loans can be calculated by[17] using the following loan information: (1) loan date/financing start date; (2) first payment date; (3) loan term; (4) monthly payment amount; (5) amount financed; and (6) prepaid finance charge.

46.    Rather than disclosing a true and accurate MAPR to service members like Plaintiff and the class, Omni fails to include prepaid finance charge within the amount financed.  As a result, the actual amount financed, (2) the finance charge, and the (3) interest rate (MAPR) are misstated on all the standard form loan documents used by Omni. (Exhibit 1).

47.    Six (6) of Plaintiff's loans from Omni exceeded the 36% interest rate cap in violation of the MLA:

        a.  Plaintiff's November 16, 2016 loan has a MAPR of 54.260%[18];

        b.  Plaintiff's May 18, 2018 loan has a MAPR of 37.354%;

        c.  Plaintiff's November 14, 2018 loan has a MAPR of 38.257%;

        d.  Plaintiff's October 23, 2019 loan has a MAPR of 41.656%;

        e.  Plaintiff's September 8, 2021 loan has a MAPR of 38.156%; and

        f.  Plaintiff's April 8, 2021 loan has a MAPR of 38.074%.

48.    As a result of Omni's unlawful interest rates exceeding 36%, Omni violated the

---

[17] https://www.cchwebsites.com/content/calculators/LoanMAPR.html

[18] To illustrate Omni's unlawful and usurious interest rates that exceed 36% MAPR, Plaintiff relied on the MAPR loan calculator located at: https://www.cchwebsites.com/content /calculators/LoanMAPR.html. (Exhibit 2 Compilation of all loans into one exhibit).

MLA and suffered actual damages by paying interest on loans in excess of the 36% MLA interest rate cap.

49.     All of Plaintiff's loans under Omni's standard form Agreement and/or Disclosure Form are void from inception under the MLA because the loan contains one or more of the following MLA violations: (a) exceeds 36% MAPR; (b) rolled over, renewed, repaid, refinanced, or consolidated consumer credit using proceeds of other credit extended from the same creditor to the same covered borrower; (c) required the borrower to give Omni a security interest in her bank account; and (d) required repayment by allotment as a condition of the loan.

**C. The Military Lending Act, 10 U.S.C. § 987 Applies to Omni Loans**

50.     Plaintiff and the Class Members are "covered members," "dependents," and/or "covered borrowers" subject to the protections and limitations imposed by the MLA.  Specifically, 10 U.S.C. § 987(i)(1) of the MLA defines a "covered member" as "a member of the armed forces who is (A) on active duty under a call or order that does not specify a period of 30 days or less; or (B) on active Guard and Reserve Duty".  Section 987(i)(2) of the MLA defines "dependent, with respect to a covered member, [as] a person described in subparagraph (A), (D), (E), or (1) of section 1072(2) of this title".  Section 1072(2) defines "dependent" to include a spouse.  See also, 32 C.F.R. § 232.3(g)(1) (defining "covered borrower" as a "consumer who, at the time the consumer becomes obligated on a consumer credit transaction or establishes an account for consumer credit, is a covered member or a dependent of a covered member").

51.     Plaintiff is a "covered borrower" with respect to the Omni loans at issue because she is an active-duty service member who is obligated by Colorado and Virginia law to repay loans that were given to her for personal, family or household purposes.

52.     Defendant is a "creditor" subject to the requirements and limitations imposed by

14

the MLA in that it engaged in the business of extending consumer credit covered by the MLA. 10 U.S.C. § 987(i)(5); *also* 32 C.F.R. § 232.3(i).

53.     The underlying installment loan transactions at issue in this case constitute "consumer credit" subject to the protections and limitations imposed by the MLA because they are "credit offered or extended to a covered borrower primarily for personal, family, or household purposes," that is both subject to a finance charge, payable by written agreement in more than four (4) installments and does not qualify for any of the identified exceptions. 32 C.F.R. § 232.3(f)(1); *also* 10 U.S.C. § 987(i)(6).

**D.     The CFPB Action**

54.     The Consumer Finance Protection Bureau ("CFPB") recently investigated Omni's actions and informed Omni that it intended to bring an enforcement action for Omni's continuous violations of the MLA, the EFTA, and other federal consumer protection laws.

55.     On December 21, 2020, Omni stipulated to the issuance of a Consent Order to resolve the action. Exhibit 3.

56.     The December 28, 2020 Consent Order, set forth findings of fact reached by the CFPB following its investigation, including:

- that since October of 2016 Omni "employees tell the Covered Members that in order to get the loan they must repay by allotment" (*see* Consent Order, ¶ 10);

- such covered members "have been harmed in the amount of interest and fees paid because they were wrongfully deprived of the option to pay by means other than allotment" (*id.* at ¶ 12);

- "[Omni] violated the MLA[,] 10 U.S.C. § 987(e)(6)" (*id.* at ¶ 13);

- "Regardless of the repayment method selected by the borrower, [Omni] requires every

borrower to provide bank account and routing information. And each customer must sign a contract that authorizes [Omni] to initiate ab electronic-fund transfer from the identified bank account at the scheduled payment date in the event of a payment default under the primary payment method. Under the contract, [Omni] is authorized to initiate and electronic fund transfer on the first business day after the due date of a payment that has been missed" (*id.* at ¶ 15);

57.     Among other things, the Consent Order: (a) enjoined Omni from conditioning future loans to covered members on repayment by allotment or repayment by preauthorized EFT (*id.* at ¶ 23), (b) required Omni to clearly and prominently inform existing borrowers that they can repay using different methods (*id.*  at ¶ 24), (c) precluded Omni from drafting bank accounts by preauthorized EFT or accepting loan repayment by allotment unless specifically authorized after disclosing these methods are optional. (*id.* at ¶¶ 25-26), (d) required Omni to train its loan origination employees that allotment is optional. (*id.* at ¶ 27)., and (e) prohibited Omni from incentivizing employees to obtain allotment authorization or considering the number or rate of customers that elect to pay by allotment when evaluating employee performance. (*id.* at ¶ 28).

58.     The Consent Order also required Omni to pay a civil monetary penalty of $2,175,000.00 to the CFPB. *Id.* at ¶ 36. The Consent Order did not, however, afford any monetary relief to those covered members and their dependents or consumers who have been victimized by Omni's consistent violations of the MLA or the EFTA.

59.     Notably, the Consent Order permitted Plaintiff and the Class to pursue a private right of action against Defendant.

60.     Additionally, the Consent Order prohibits Omni from claiming an offset or reduction in any such case "because of the civil money penalty paid in this action." *Id.* at ¶ 40. The

Consent Order further requires Omni to notify the CFPB of any "final judgment, consent order, or settlement in a Related Consumer Action … [noting] the amount of redress, if any, that [Omni] paid or is required to pay to consumers and describe the consumers or classes of consumers to whom that redress has or will be paid." *Id.* at ¶ 44.

61.     This Class Action seeks to fill the void left by the CFPB Consent Order by obtaining necessary actual damages, declaratory and injunctive relief for service members and their dependents like Plaintiff and the Class, who had loans that contained violative interest rates, included rolled over loans, and conditioned repayment by allotment or preauthorized EFTs.

## VI.    CLASS ALLEGATIONS

62.     Plaintiff brings this case as a class action, pursuant to Rule 23 of the Federal Rules of Civil Procedure. The proposed classes include:

> All MLA covered borrowers in the United States that entered into an Omni Repayment Agreement in substantially the same form as Exhibit 1 and one of the following: (1) were charged a MAPR above 36% (The Interest Rate Class); (2) the loan proceeds used are from other Omni loans that Omni extended to the same Covered Borrower (The Roll-Over Class); (3) Omni conditioned  the loan on the borrower establishing an allotment (The Allotment Class); or (4) Omni conditioned the loan on the borrower giving Omni a security interest in his or her bank account (The Security Interest Class).

63.     Collectively, the Classes are referred to herein as the "Class."  Expressly excluded from the Class are: (a) any Judge presiding over this action and members of their families; (b) Defendant and any entity in which Defendant has a controlling interest, or which has a controlling interest in Defendant, and its legal representatives, assigns and successors; and (c) all persons who properly execute and file a timely request for exclusion from the Class.

64.     The class period is five (5) years prior to the original filing date of this action.

65.     Plaintiff reserves the right to amend the Class definitions if further investigation

and discovery indicates that the Class definitions should be narrowed, expanded, or otherwise modified.

**Rule 23(a) Criteria**

66.    Numerosity. Omni's scheme has harmed and continues to harm military consumers and their dependents.  The members of the proposed Class are so numerous that joinder of all members is impracticable.  Omni's website: www.omnimilitaryloans.com states that it is "one of the leaders in the military lending market" with "offices at most military installations across the United States."  The sheer volume of its military loan business supports a finding of numerosity.

67.    The exact number of Class members is unknown as such information is in the exclusive control of Omni.  However, upon information and belief, Omni has issued thousands of loans to (a) covered borrowers that exceeded 36% MAPR; (b) refinanced installment loans to the same covered borrower; (c) conditioned the loan upon repayment by allotment; and (e) required that the covered borrower give Omni a security interest in their bank account.

68.    Due to the nature of the consumer loans involved and the fact that Omni has more than 18 locations which are deliberately located near military bases, in at least 12 states, and provides loans to service members and their dependents stationed worldwide, Plaintiff believes the Class consists of easily thousands of consumers.  The Defendant's locations are geographically dispersed throughout the world, United States and Virginia, making joinder of all Class members impracticable.

69.    Commonality. Common questions of law and fact affect the right of each Class member and common relief by way of damages is sought for Plaintiff and Class members.

70.    The harm that Omni has caused or could cause is substantially uniform with respect to Class members. Common questions of law and fact that affect the Class members include, but

18

are not limited to:

    a.  Whether Plaintiff and the Class members are "covered members," "dependents," and "covered borrowers" subject to the protections and limitations of the MLA;

    b.  Whether Defendant is a "creditor" subject to the protections and limitations of the MLA;

    c.  Whether Defendant's installment loans are "consumer credit" subject to the protections and limitations of the MLA;

    d.  Whether Omni entered into standard form Repayment Agreements, final Loan Disclosure Forms, and Notices to Active Duty Service Members and Dependents with servicemembers and their dependents;

    e.  Whether Omni's installment loans exceeds 36% MAPR;

    f.  Whether Omni rolls over, renews, repays, refinances, or consolidates any consumer credit extended to an existing borrower using the proceeds of other Omni installment loans;

    g.  Whether Omni loans are conditioned upon establishing an allotment for repayment;

    h.  Whether Omni loans are conditioned upon giving Omni a security interest in the borrower's bank account;

    i.  Whether Defendant's installment loans to covered borrowers are unlawful and void from inception for violating the MLA;

    j.  Whether members of the Class have sustained damages and, if so, the proper measure of such damages;

k.  Any declaratory and/or injunctive relief to which the classes are entitled.

71.    Typicality. The claims and defenses of the representative Plaintiff is typical of the claims and defenses of the Class because she is an active-duty member of the United States Military and her loan transactions with the Defendant were typical of the type of personal, household, or family loans that Defendant normally provides to service members.  The documents involved in the transaction were standard form documents and the violations are statutory in nature. Plaintiff suffered damages of the same type and in the same manner as the Class she seeks to represent.  There is nothing peculiar about Plaintiff's claims.

72.    Adequacy. The representative Plaintiff will fairly and adequately assert and protect the interests of the Class. She has hired attorneys who are experienced in prosecuting class action claims and will adequately represent the interests of the class and she has no conflict of interest that will interfere with maintenance of this class action.

### Rule 23 (b) Criteria

73.    Predominance and Superiority. A class action provides a fair and efficient method for the adjudication of this controversy for the following reasons:

l.  The common questions of law and fact set forth herein predominate over any questions affecting only individual Class members.  The statutory claims under the MLA require a simple identification of those consumers who are covered members under the statute, and an act in violation of the MLA.

m.  There are no unusual legal or factual issues that would create manageability problems;

n.  Prosecution of thousands of separate actions by individual members of the Class would create a risk of inconsistent and varying adjudications against

Defendant could create incompatible standards of conduct;

o.  Adjudications with respect to individual members of the Class could, as a practical matter, be dispositive of any interest of other members not parties to such adjudications, or substantially impair their ability to protect their interests; and

p.  The claims of the individual Class members are small in relation to the expenses of litigation, making a Class action the only procedural method of redress in which Class members can, as a practical matter, recover.

74.    Moreover, Defendant has acted and refused to act on grounds generally applicable to the Class, thereby making declaratory relief and corresponding final injunctive relief under Rule 23(b)(2) appropriate with respect to the Classes as a whole.  Defendant should be enjoined from making loans to covered borrowers in violation of the MLA and a declaration should be made that the loans are void from inception.

**COUNT I**
**Violation of the Military Lending Act**
**10 U.S.C. §987(b)**
**(The Interest Rate Class)**

75.    Plaintiff was a "covered borrower" and "covered member" as those terms are defined pursuant to 32 C.F.R. §232.3(g)(1) and (g)(2)(i).

76.    Omni was a "creditor" which provided "credit" to Plaintiff as those terms are defined in 32 C.F.R. §232.3(h) and (i).

77.    In her installment loans titled as May 2018 Loan, November 2018 Loan, October 2019 Loan, September 2021 Loan, and April 2022 Loan, Plaintiff entered into Omni's standard form Agreement and Disclosure Form which was utilized for all Class members, that issued installment loan with an interest rate cap in excess of 36% MAPR in violation of 10 U.S.C. §

987(b); 32 C.F.R. §232.4(c).

78.     Omni's standard form Agreement and Disclosure Form executed by Plaintiff and the Class does not include all finance charges and prepaid finance charges in its MAPR calculations.  Thus, Omni has failed to disclose the true interest rate In fact, six of the eight loans Plaintiff received from Omni exceed the interest rate cap of 36% MAPR imposed by the MLA.

79.     The MAPR must include (1) any amount financed, finance charges, and prepaid finance charges; and (2) any fee for a credit-related ancillary product sold in connection with the credit transaction for closed-end credit. 32 C.F.R. Section 232.4.   Omni did not include its prepaid finance charge in its MAPR calculations.

80.     When properly calculated to include all costs and finance charges, the true MAPR for Plaintiff loans are as follows:

    a.  Plaintiff's November 16, 2016 loan has a MAPR of 54.260%[19];

    b.  Plaintiff's May 18, 2018 loan has a MAPR of 37.354% MAPR;

    c.  Plaintiff's November 14, 2018 loan has a MAPR of 38.257%;

    d.  Plaintiff's October 23, 2019 loan has a MAPR of 41.656%;

    e.  Plaintiff's September 8, 2021 loan has a MAPR of 38.156%; and

    f.  Plaintiff's April 8, 2021 loan has a MAPR of 38.074%.

81.     As a result of Omni's unlawful interest rates exceeding 36%, Omni violated the MLA and suffered actual damages by paying interest on loans in excess of the 36% MLA interest rate cap.

82.     The MLA's "Penalties and remedies" subsection provides, in part, that "any credit

---

[19] To illustrate Omni's unlawful and usurious interest rates that exceed 36% MAPR, Plaintiff relied on the MAPR loan calculator located at: https://www.cchwebsites.com/content/calculators/LoanMAPR.html. (Exhibit 2 Compilation of all loans into one exhibit).

agreement, promissory note, or other contract prohibited under this section is void from the inception of such contract." 10 U.S.C. §987(f)(3).

83.     Accordingly, all Class members' Omni Agreements and final Disclosure Forms that contain an MAPR that exceeds 36% are void, must be rescinded with restitution paid for all amounts paid by Plaintiff and Class members to Omni.

84.     In total, Plaintiff's six Omni installment loans that exceed 36% MAPR should be voided from inception and Omni should be required to reimburse Plaintiff for the total interest paid.

85.     As a direct and proximate cause of Omni's violations, Plaintiff and the Class are entitled to actual damages of not less than $500 for each separate violation, as well as punitive damages along with injunctive relief pursuant to section 987(f)(5)(A) of the MLA.

86.     Plaintiff and the Class are entitled to attorneys' fees and costs pursuant to section 987(f)(5)(B) of the MLA.

## COUNT II
### Violation of the Military Lending Act
### 10 U.S.C. §987(e)(1)
### (The Roll-Over Class)

87.     Plaintiff was a "covered borrower" and "covered member" as those terms are defined pursuant to 32 C.F.R. §232.3(g)(1) and (g)(2)(i).

88.     Omni was a "creditor" which provided "credit" to Plaintiff as those terms are defined in 32 C.F.R. §232.3(h) and (i).

89.     Plaintiff's May 2018 Loan, September 2021 Loan, and April 2022 Loan, all included proceeds of other credit extended by Omni to the same covered borrower, such that those prior Omni loans were rolled over, renewed, repaid, refinanced, or consolidated by Omni in violation of 10 U.S.C. § 987(e)(1).

90.     Omni's standard form Agreement and Disclosure Form executed by Plaintiff and the Class permits covered borrowers to use proceeds from other credit extended by Omni to pay down or off other rolled over, renewed, repaid, refinanced, or consolidated loans extended by Omni. In fact, five of the eight Omni loans to Plaintiff are refinanced installment loans that violate section 987(e)(1) of the MLA.

91.     The MLA's "Penalties and remedies" subsection provides, in part, that "any credit agreement, promissory note, or other contract prohibited under this section is void from the inception of such contract." 10 U.S.C. §987(f)(3).

92.     All Class members' Omni Agreements and final Disclosure Forms that are similar to Plaintiff's loans with Omni and who obtained an Omni loan where the proceeds were used in whole or in part to roll over, renew, repay, refinance, or consolidated prior loans to Omni, and such loans are void from inception and must be rescinded, and restitution must be paid for all amounts paid by Plaintiff and Class members to Omni.

93.     In total, Plaintiff's eight installment loans contracted with Omni should be voided from inception and Omni should be required to reimburse Plaintiff for the total interest paid.

94.     As a direct and proximate cause of Omni's violations, Plaintiff and the Class are entitled to actual damages of not less than $500 per violation, as well as punitive damages along with injunctive relief pursuant to section 987(f)(5)(A) of the MLA.

95.     Plaintiff and the Class are entitled to attorneys' fees and costs pursuant to section 987(f)(5)(B) of the MLA.

## COUNT III
## Violation of the Military Lending Act

**10 U.S.C. §987(e)(6)**
**(The Allotment Class)**

96.    Within five (5) years of the original filing date of this case, Omni violated the MLA

and its implementing regulations by conditioning the extension of consumer credit to Plaintiff and

the Class upon the establishment of an allotment to repay the loan obligations. 10 U.S.C. §

987(e)(6); 32 C.F.R. § 232.8(g).

97.    Plaintiff was a "covered borrower" and "covered member" as those terms are

defined pursuant to 32 C.F.R. §232.3(g)(1) and (g)(2)(i).

98.    Omni was a "creditor" which provided "credit" to Plaintiff and the Class as those

terms are defined in 32 C.F.R. §232.3(h) and (i).

99.    Plaintiff entered into eight standard form Agreements and Disclosure Forms with

Omni, which all required Plaintiff and the Class to enroll in allotment as a condition of receiving

an Omni installment loan.  Although the loan documents appear to make the election optional,

allotment was actually required by Omni despite this language.

100.    Plaintiff and Class members' damages are a direct and proximate result of Omni's

violation of 10 U.S.C. § 987(e)(6), which prohibits Omni from conditioning the loan on payments

being made by allotment.

101.    Plaintiff and Class members have been harmed and suffered actual damages (as

defined by the MLA) by their standard form Agreements and Disclosure Forms failed to provide

other methods of repayment as required under 10 U.S.C. § 987(e)(6).

102.    The MLA's "Penalties and remedies" subsection provides, in part, that "any credit

agreement, promissory note, or other contract prohibited under this section is void from the

inception of such contract." 10 U.S.C. §987(f)(3).

103.    As a direct and proximate cause of Omni's violations, Plaintiff and the Class are

entitled to actual damages not less than $500 per violation and punitive damages along with injunctive relief pursuant to section 987(f)(5)(A) of the MLA.

104. Plaintiff and the Class are entitled to attorneys' fees and costs pursuant to section 987(f)(5)(B) of the MLA.

**COUNT IV**
**Violation of the Military Lending Act**
**10 U.S.C. § 987(e)(5)**
**(The Security Interest Class)**

105. Within five (5) years of the original filing date of this case, Omni violated the MLA and its implementing regulations by conditioning the extension of consumer credit to Plaintiff and the Class upon the borrower identifying a bank account to be used as a security interest of a loan. 10 U.S.C. § 987(e)(5); 32 C.F.R. § 232.8(e)(3).

106. Plaintiff was a "covered borrower" and "covered member" as those terms are defined pursuant to 32 C.F.R. §232.3(g)(1) and (g)(2)(i).

107. Omni was a "creditor" which provided "credit" to Plaintiff and the Class as those terms are defined in 32 C.F.R. §232.3(h) and (i).

108. Plaintiff entered into eight (8) standard form Agreements and Disclosure Forms with Omni, which all required, as a condition of the loan, that Plaintiff and the Class give Omni a security interest in their bank account.

109. Plaintiff and Class members damages are a direct and proximate result of Omni's violation of 10 U.S.C. § 987(e)(5), which prohibits creditors like Omni from taking security interest in "deposit, savings, or other financial account" when proving a loan to a Covered Borrower.

110. Plaintiff and Class members have been harmed and suffered actual damages (as defined by the MLA) by their standard form Agreement and Disclosure Form when Omni required

26

its borrowers to identify a bank account to use as a security interest of a loan under 10 U.S.C. § 987(e)(5).

111.    The MLA's "Penalties and remedies" subsection provides, in part, that "any credit agreement, promissory note, or other contract prohibited under this section is void from the inception of such contract." 10 U.S.C. §987(f)(3).

112.    As a direct and proximate cause of Omni's violations, Plaintiff and the Class are entitled to actual damages not less than $500 per violation and punitive damages along with injunctive relief pursuant to section 987(f)(5)(A) of the MLA.

113.    Plaintiff and the Class are entitled to attorneys' fees and costs pursuant to section 987(f)(5)(B) of the MLA.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter an Order:

a.  Certifying this action as a class action as provided by Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiff as Class Representative, and appointing undersigned attorneys and their firms as Class Counsel;

b.  Declaring that Defendant violated the MLA, and adjudging that Plaintiff's and Class members' Omni installment loan Agreements and Disclosure Forms are void and determining appropriate relief in the form of rescission, restitution, or reformation;

c.  Adjudging that Defendant violated the MLA and award Plaintiff and Class members actual damages of not less than $500 per violation and punitive damages pursuant to 10 U.S.C. § 987(f)(5)(A);

d.  Awarding Plaintiff, and all those similarly situated, reasonable attorneys' fees and costs incurred in this action pursuant to 10 U.S.C. § 987(f)(5)(B);

e.  Enjoin Omni from further violation of the MLA statutory rate cap exceeding 36% MAPR.

f.  Enjoin Omni from further financing to consumers where it requires as a condition to a loan that a borrower establish an allotment;

g.  Enjoin Omni from further financing to consumers where it requires as a condition to a loan that a borrower give a security interest in their bank account;

h.  Awarding Plaintiff, and all those similarly situated, any pre-judgment and post-judgment interest as may be allowed under the law; and

i.  Awarding such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a jury trial on all issues so triable.

DATED:  OCTOBER 12, 2022                         CONSUMER LITIGATION ASSOCIATES, P.C.

BY:   /s/ Leonard A. Bennett
      LEONARD A. BENNET, VBN: 37523
      763 J Clyde Morris Blvd Ste 1A
      Newport News, VA 23601
      Telephone: 757-930-3660
      lenbennett@clalegal.com

VARNELL & WARWICK, P.A.

BY:   /s/ Brian W. Warwick
      (PRO HAC VICE TO BE SUBMITTED)
      BRIAN W. WARWICK, FBN:  0605573
      JANET R. VARNELL, FBN: 0071072
      P.O. BOX 1870
      LADY LAKE, FL  32158
      TELEPHONE:  (352) 753-8600
      FACSIMILE:  (352) 504-3301
      bwarwick@varnellandwarwick.com
      jvarnell@varnellandwarwick.com
      kstroly@varnellandwarwick.com

BROCHU LAW, PLLC

28

BY:   /s/ Christopher J. Brochu
        (*PRO HAC VICE TO BE SUBMITTED*)
        CHRISTOPHER J. BROCHU, FBN: 1013897
        841 PRUDENTIAL DRIVE SUITE 1200
        JACKSONVILLE, FL 32207
        TELEPHONE: (904) 201-1771
        FAX: (904) 429-4218
        *c.brochu@brochulaw.com*
        *j.esquibel@brochulaw.com*

        *Attorneys for SSG Wood, and on behalf of all others similarly situated*

29